**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **ANITA E. MURRAY,** | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | )    **Case No.**    **CIV-04-1682-W** |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
|        **Defendant.** | ) |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423; and supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED for further administrative proceedings**.

## PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI alleging a disability since October 15, 1999 (TR. 89-91, 323-324). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 34, 39, 325, 333).  Pursuant to the Plaintiff's request, a hearing de novo was held before an administrative law judge (ALJ) on April 29, 2004 (TR. 339-368). The Plaintiff appeared in person and with her attorney representative and offered her testimony in support of the applications (TR. 342-363).  A vocational expert (VE) also testified at the request of the ALJ (TR. 364-367).  The ALJ issued his decision on July 15, 2004 finding that Plaintiff was not entitled to DIB or SSI (TR. 26-29).  The Appeals Council denied the Plaintiff's request for review on

October 25, 2004, and thus, the decision of the ALJ became the final decision of the Commissioner

(TR. 6-8).

## STANDARD OF REVIEW

The Tenth Circuit case of Casias v. Secretary of Health & Human Services, 933 F.2d 799,

800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by
> substantial evidence. (citations omitted). Substantial evidence is
> "more than a mere scintilla. It means such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> (citations omitted). In evaluating the appeal, we neither reweigh the
> evidence nor substitute our judgment for that of the agency.
> (citations omitted). We examine the record as a whole, including
> whatever in the record fairly detracts from the weight of the
> Secretary's decision and, on that basis, determine if the
> substantiality of the evidence test has been met. (citations omitted).
> If, however, the correct legal test in weighing the evidence has not
> been applied, these limitations do not apply, and such failure
> constitutes grounds for reversal. (citations omitted).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be

found only where there is a conspicuous absence of credible choices or no contrary medical

evidence." Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992) (citations omitted).

## DISCUSSION & FINDINGS

In addressing the Plaintiff's disability applications the ALJ followed the five-step sequential

evaluation process set forth in 20 C.F.R. §404.1520.  At step one, the ALJ found that the Plaintiff

had not engaged in substantial gainful activity since the alleged disability onset date, so the

process continued (TR. 26).   At step two, the ALJ concluded that Plaintiff had severe

cardiovascular and mental impairments (TR. 28).  At step three, the ALJ found that the Plaintiff did

not have an impairment or combination of impairments which meet or equal any impairment listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 28).  At step four, the ALJ found that Plaintiff

lacked the residual functional capacity (RFC) to perform her past relevant work (PRW) (TR. 29).

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989); Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  The ALJ found that Plaintiff had the RFC to perform a wide range of light work subject to the following restrictions:

> She should do no repetitive stooping, kneeling, or crouching. She is able to do occasional reaching. Physical examination reveals that she has no clarity of vision at 20 feet or more. She has the ability to remember and understand very short and simple instructions and carryout simple routine tasks. She requires work that is relatively isolated with limited contact with peers and supervisors. She should have no extended exposure to pollutants, dust or fumes. She should not have work that requires exposure to extreme temperature or humidity. She is able to perform routine, repetitive, low stress work

(TR. 27).  The ALJ further found that Plaintiff could perform other jobs which existed in significant numbers in both the national and regional economies (TR. 28, 29). By considering the testimony of the VE, the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 28, 29).

On appeal to this Court, Plaintiff alleges that the ALJ erred by formulating an RFC assessment which failed to include all of Plaintiff's limitations.

MEDICAL EVIDENCE

In February 2002 Plaintiff was examined by Albert J. Gomez, M.D., who found that she was alert and oriented times three and appeared to be in no acute distress; that her visual acuity without glasses showed 20/50 in both eyes; and that her back and extremities were within normal limits (TR. 194).  Dr. Gomez assessed Plaintiff as being able to occasionally lift 20 pounds in an 8 hour workday, and being able to stand or sit at least 6 hours in an 8 hours

workday with normal breaks (TR. 195).  His assessment was that Plaintiff had chronic anxiety and he recommended a psychiatric evaluation (TR. 195).

In March 2002 Plaintiff underwent a consultative psychological evaluation performed by Alan Yarbrough, Ed.D., who found that Plaintiff's long term and short term memory were intact (TR. 205).  He assessed her as "maybe experiencing at least mild impairment in her ability to understand as she is possibly functioning within the borderline range of intelligence" (TR. 206). Dr. Yarbrough also found that Plaintiff had mild to moderate impairment in concentration; that her social interaction was generally appropriate; and that her ability to adapt appeared to be mild to moderately impaired primarily by her concentration impairment (TR. 206). Dr. Yarbrough's impression was of panic disorder without agoraphobia by history and depressive disorder, not otherwise specified, with a GAF score of 50 [1] (TR. 206).

In May 2002, an agency physician, Frank Edwards, Ph.D., completed a mental RFC assessment of Plaintiff in which he concluded that she was moderately limited in the following areas:

> The ability to understand and remember detailed instructions The ability to carry out detailed instructions. The ability to maintain attention and concentration for extended periods. The ability to sustain an ordinary routine without special supervision. The ability to work in coordination with or proximity to others without being distracted by them. The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an

---

[1] A GAF represents Axis V of the Multiaxial Assessment system.  A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994), p. 30. The GAF score is taken from the GAF scale which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 32. The GAF scale defines the range from 41-50 as follows: Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

> unreasonable number and length of rest periods. The ability to interact appropriately with the general public; The ability to accept instructions and respond appropriately to criticism from supervisors. The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. The ability to respond appropriately to changes in the work setting. The ability to set realistic goals or make plans independently of others

(TR. 260-261). An earlier mental RFC assessment completed by a different agency physician in March 2002 concluded that Plaintiff was also moderately limited in her ability "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" (TR. 222).

Also in May 2002, a physical RFC assessment was completed by agency physicians in which they concluded that Plaintiff was able to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, and sit, stand and/or walk for a total of about six hours in an eight hour workday; but that Plaintiff had a far acuity visual limitation and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (TR. 227, 229, 230).  Agency physicians further concluded that Plaintiff had no other exertional, postural, manipulative, visual, communicative, or environmental limitations (TR. 227-230).

In August 2002 Plaintiff was involuntarily hospitalized after a drug overdose secondary to a suicide attempt (TR. 316). The admitting physician, Kevin Hathaway (name partially illegible), M.D., stated that Plaintiff "presented as manipulative, angry, with labile affect, depressed mood, impaired insight, judgment, and impulse control" (TR. 300). The physician also described Plaintiff as showing inadequate coping skills or primary support (TR. 300). The physician recommended inpatient psychiatric care (TR. 300).  Plaintiff was then transferred to an inpatient psychiatric facility where she remained for four days (TR. 313, 268).

Upon admission to the psychiatric facility Plaintiff was examined by William R. Mays, M.D.,

5

who stated that she was awake, alert, and oriented to time, place, person, and present situation; that she showed good eye contact, erect posture, and normal motor behavior; and that her speech was within normal limits (TR. 269). Dr. Mays further stated that Plaintiff's thought processes were logical and goal directed; that her memory was intact in all spheres; that her attention span was good; and that her judgment was impaired with limited insight (TR. 269). Plaintiff was discharged home and directed to follow-up with a psychiatrist (TR. 270). She was also referred to an intensive outpatient program (TR. 270). Plaintiff's discharge diagnosis was of major depressive disorder, recurrent; and cocaine dependence; with a GAF score of 60 [2] (TR. 268). Plaintiff attended only one session of the voluntary intensive outpatient program and failed to return (TR. 265, 266).

At the hearing, Plaintiff testified that she had difficulty concentrating, although she was able to write poetry, write in her journal and "keep books and stuff" (TR. 353). She also testified that she was able to cook, clean and wash for her landlord in exchange for her room and board (TR. 356).

Plaintiff contends that the ALJ improperly disregarded the opinions of her treating physicians, Dr. Hathaway and Dr. Mays (See Plaintiff's Opening Brief at pages 8-9). A treating physician's opinion is entitled to great weight. Williams v, Bowen, 844 F.2d 748, 757-58 (10th Cir. 1988) (more weight will be given to evidence from a treating physician than to evidence from a consulting physician appointed by the Secretary or a physician who merely reviews medical records without examining the claimant); Turner v. Heckler, 754 F.2d 326, 329 (10th Cir. 1985). However, a treating physician's opinion may be rejected "if it is brief, conclusory, and unsupported by medical evidence." Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987). If an ALJ disregards a treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so. Byron v.

---

[2] The GAF scale defines the range from 51-60 as follows: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984).  In Goatcher v. United States Dep't of Health &

Human Services, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ

must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

The ALJ's decision is silent as to the opinions of Dr. Hathaway.  The ALJ's decision is also

conspicuously silent in its treatment of the opinion of Dr. Mays that Plaintiff's judgment was

impaired with limited insight (TR. 269). The ALJ's failure to discuss or even mention any medical

evidence from Plaintiff's treating physicians, Drs. Hathaway and Mays, violates the standards

established by Byron and its progeny.

Although it appears that the opinions of Dr. Hathaway were given in the context of an one-

time psychiatric consultation, such does not excuse the ALJ's failure to discuss and evaluate them

in his decision.

Thus, remand is appropriate since the ALJ both disregarded and ignored the opinions of

Plaintiff's treating physicians, without offering specific, legitimate reasons for doing so.

Plaintiff also argues that the ALJ erred by formulating an RFC assessment which failed to

include all of Plaintiff's limitations (See Plaintiff's Brief at pages 10-12). Specifically, Plaintiff urges

that the ALJ ignored agency physician, Dr. Edwards,' findings that Plaintiff was moderately

impaired in her "ability to sustain an ordinary routine without special supervision" and moderately

impaired in her "ability to perform at a consistent pace" (TR. 261).  As suggested by Plaintiff, it is

apparent that the ALJ's RFC addresses some of Plaintiff's limitations established by consultative examiners and inexplicably ignores others (See Plaintiff's Brief at page 11).

Social Security Ruling 96-6p states that findings regarding the nature and severity of an impairment made by state agency consultants and other program physicians and psychologists "must be treated as expert opinion evidence of nonexamining sources."   Further, ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions."  Id. Although the ALJ adopted, in part, the state agency consultants' findings in his decision, it appears that the ALJ discounted their findings without explanation. Thus, the consultative examiners' assessments of Plaintiff's mental capabilities were contrary to the ultimate conclusions reached by the ALJ and the ALJ's failure to discuss and weigh this record expert medical evidence violated the requirements of Social Security Ruling 96-6p and undermined the ALJ's ultimate conclusions regarding Plaintiff's alleged mental impairments.  (See Tiger v. Apfel, 141 F.3d 1186 ((10th Cir. 1998)) 1998 U.S. App. LEXIS 7093).

On remand, the ALJ should discuss and weigh the opinions of the agency physicians. If such opinions are not included in Plaintiff's RFC then the ALJ should offer an explanation.

### RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is **not** supported by substantial evidence and should be **REVERSED AND REMANDED for further administrative proceedings**. The parties are advised of their right to object to these findings and recommendation within twenty (20) days of the date of the filing hereof, in accordance with 28 U.S.C. §636 and Local Court Rule 72.1 (a). The parties are further advised that failure to make timely objection to these findings and recommendation waives their right to appeal from a

judgment of the district court based upon these findings and recommendation. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

The foregoing Findings and Recommendation disposes of all issues referred to the undersigned magistrate judge in the above captioned matter.

ENTERED this the 28th day of November, 2005.


_____

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE